We move to the fifth case this morning, Marshall Boykin versus Steve Sendenholm. Well, according to the letters you submitted to the clerk, you're at odds with, regarding the dismissal of the case. Go ahead. Yes, Your Honor, good morning. That is correct, Your Honor. And I want to, that's actually the way that I kind of expected my remarks this morning to go. I would like to just sort of picking up on these two, on these letters that have been exchanged to talk about what we think makes the most sense as a way forward. We are in agreement with the state that at minimum, the judgment below can't stand. Where we disagree with the state is about whether there should be further hearings on the exhaustion-related question. There was an exhaustion hearing in this case. It occurred 859 days ago. To meet its burden at that hearing, the state introduced witness testimony and a log that purported to show that Mr. Boykin, my client, never submitted an emergency grievance. The district court, in reliance on that information, dismissed my client's complaint. We argued in this, in our briefing, that the defense did not meet its burden on this record because it never established a fundamental threshold point that it should have been on notice from, from this court's opinion in Roberts v. Neal, that they had to produce evidence about whether an emergency grievance, whether there was any record of an emergency grievance specifically. After the state dismissed that argument in its briefing, it has now acknowledged that the testimony about log keeping and the log itself produced at the hearing are worthless on the key probative question at the hearing. And we cannot imagine how the state could possibly have met its burden on this record given what we know now. But counsel, I guess one thing that confuses me is the magistrate judge found in the district court, you know, agreed that in the Pavey hearing he had not exhausted because he didn't pursue the regular grievance procedure after he didn't get a response back in the emergency grievance procedure. So there was a procedure that was available to him and the time had not expired for pursuing the regular grievance when he filed his suit. So why do we even have to worry about the logs? Why is the existence of the emergency logs an important issue when he did have that other route available? Yes, Your Honor. So I would like to make a couple of points about that. First of all, the state agrees with us that the emergency logs are fundamental to this inquiry. Otherwise, I assume. And I'm going to ask the state about that too. Yes, and I think that you should. And so our response today, Your Honor, is the same as we had in our brief, which is that there is a well-developed body of doctrine in this court that says when a prisoner follows prison rules and submits a grievance about an incident that has occurred and receives no response, no ruling, no substantive ruling on the complaint that he submitted, the exhaustion inquiry is at an end. And now we recognize that that is pegged to the prison rules. So if the prison rules required a prisoner to take a non-response where the prison just ignores the inquiry and do something further with it, then Mr. Boykin would have had to do that. As we've pointed out, though, in our briefing, the Illinois Department of Corrections rules did not require Mr. Boykin to do anything further once he received his emergency grievance back without a response. Okay, I agree with you that not receiving a response if there had not been another avenue under our precedent could be treated as a denial, and then he had exhausted, and then he could file his suit. But unavailability in the Supreme Court's cases isn't pegged to that. I mean, if he had another route available to him, I don't read those cases as requiring him. I mean, I don't read those cases to say that, well, if the regulations didn't require him to turn to the regular grievance procedure when the emergency grievance procedure didn't pan out and he was denied, that he could then immediately file a suit. Roberts in our cases don't address that situation. They don't address when a prisoner has an option, but prison regulations don't require him to file a grievance through another available route. And, Your Honor, what we would say is that the way we understand the availability process to work is that the question is whether a prisoner has done everything that the prison rules require him to do in order to have his claims heard by the prison. And the Illinois Department of Corrections rules now do have a procedure that says if a prisoner files an emergency grievance and receives back a determination that it is not an emergency, the prisoner does have to do something further. The prisoner now has to submit a follow-up grievance. That was not part of the rules during the time that Mr. Boykin filed his complaint. And we think it would be—we assume the reason that was added is because prisoners didn't have to do anything further, as this Court noted in Roberts, if they submitted an emergency grievance and got no ruling on it. Can you point me to a case that says availability under the PLRA is pegged to what is required by prison regulations and not what procedures are available within the prison? I don't know that I can point you to a specific case on that, Your Honor, but we can point to—and I think we've cited the cases in the brief—that repeatedly, in the availability context, look to what a prisoner would be required to do under the steps that the prison sets forth in clear language for a prisoner, especially one with allegations of serious mental illness like my client. What guidelines and guideposts, the rules set for a prisoner to follow, and whether the prisoner did so, and whether at any stage of that process the prison failed to do what was required of it. I completely agree with you when you're talking about—so if we were talking about whether he did what he had to do within the emergency grievance route, I agree with you about what our cases say, but you can't point to any other case, right, where this was this other route available, the regular grievance route. Well, I would actually like to, if I may, Your Honor, really quickly just also point out that even on this theory, if you're to accept the theory that Mr. Boykin should have done something further, we—and this perhaps is why—and you can ask the State, but this is perhaps why the State is asking for the judgment to be reversed. If Mr. Boykin could have filed a follow-up grievance in a normal fashion at any point in time between May 7th and May 25th, we would need the log evidence to verify whether he in fact did. And I will note that even the affidavit—that was not produced at the hearing, obviously—and even in the affidavit that's been submitted lately, last week, we still don't know what the grievance—the emergency grievance log shows from May 8th through May 25th, which are all days when Mr. Boykin could have done the step that you and I have been talking about, whether it's required. And we think that that obviously could have been—that information obviously could have been provided at the first hearing. It was not, and we don't think that the State should get another chance now. And if it's—if Your Honors have no further questions at the moment, I would like to reserve the remainder of my time for rebuttal. Fine. Thank you. Thank you. Good morning, Your Honors. May it please the Court. My name is Assistant Attorney General Amora O'Meara, and I'm here on behalf of Dependent Sandholm. As we stated in our letter to the Court, as I was preparing for argument, it came to my attention— Counsel, could you raise your voice a little bit? Oh, sure. I apologize. As we stated in our letter to the Court, as I was preparing for argument, it came to our attention that the grievance log that was provided to the Court during the payee hearing did not include a log of Mr. Boykin's emergency grievances. I regret that this was not discovered sooner, but as soon as we were able to bring it to the Court's attention, we did. This is a simple mistake that occurred at the hearing, and I would like to correct a  The State did not intend to rely on this document at the hearing. If you look at the State's exhibits for the payee hearing, the only document they intended to rely on was the prisoner's complaint and the exhibits attached to that complaint, as well as the witness testimony. After the witnesses testified that they had reviewed the logs and they testified about the emergency grievance proceeding, and after the direct examination of that, the Court turned to Mr. Boykin to allow him to cross-examine the witnesses. At Mr. Boykin's request, the Court asked trial counsel to obtain the grievance logs from Dixon in a matter of moments. The State was not expecting this request. The hearing went off, the Court went off the record. The trial counsel presumably contacted someone at Dixon and asked them to locate the grievance logs. I think that somewhere in that process, the message was lost, that the grievance logs should include emergency grievances as well as the regular grievances. Again, this was an unexpected request. This was by no means an attempt to mislead the Court, mislead Mr. Boykin, take advantage of him at all. It was a simple misunderstanding that sort of happened in the rush of the moment. Counsel, can you address my question about whether it matters? Are you conceding that Mr. Boykin did not need to pursue the regular grievance procedure when he didn't receive a response to his emergency grievance? No, I am not conceding that point. I just wanted to make clear what happened at the hearing. No, I understand that, but in your 28-J letter, it sounded like when you asked us not to have argument and to send it back, that seemed like you were abandoning that ground. No, not at all. It just seemed like in an effort to be candid and to the most fair approach at this point would be to remand the case to the District Court for a new hearing to sort out any issues with credibility determinations and whether the District Court even relied on the grievance logs in making its decision. But if we sent it back, you think that the District Court could reach the exact same decision by saying he did not exhaust because there was another route available to him, not the emergency grievance, but this other track? Yes, I think the District Court could take that approach. I think the District Court could also look at the evidence. Our position is that we still met our burden at the initial PV hearing. We had witness testimony that he didn't submit his emergency grievance, that the witnesses referred to the records prior to testifying and didn't find it, that they never would have treated a grievance in the way that it was returned to Mr. Boykin without a response, and that they did not recall seeing it. So our position is that we still met our burden with respect to all of the evidence that was presented at the hearing, but in the interest of fairness. In the interest of fairness, if it does go back on that ground, should you be able to introduce the logs? I think so. A second bite at the apple? It's not really a second bite at the apple because there's no evidence here that the court relied only on the logs. Perhaps the court would have found the same had the logs never came in. Again, the state didn't even intend to introduce the logs. The state thought that the trial counsel believed that their case was strong enough without the logs based on the witness testimony and the allegations and the plaintiff's complaint about when he filed the grievance. So I don't believe this is a second bite at the apple because there's no evidence that we, there's no suggestion that the district court even needed this grievance log that, again, unfortunately was the wrong one, but that the court relied solely on that in making its determination. And just to reiterate what we said in our letter, now that we have the information, the emergency grievance log, it is clear that Mr. Boykin did not exhaust. And, again, we're not trying to be unfair or take advantage of anything. The law is what it is, and it requires exhaustion. And the evidence is here that Mr. Boykin did not exhaust. And just to address what Mr. Cassidy mentioned in his letter about appointment, recruitment of counsel, we did not address that because in our letter, because on remand, our position here remains that there was no abuse of discretion, but on remand should the district court decide to revisit the issue of recruitment of counsel and appoint counsel, we did not object to that in the trial court the first time, and we would not object to that this time. So unless the court has any further questions. So it sounds like you want us to remand and affirm. Yes, we would. I know it's an unusual situation for the court, I'm sure, but, yes, we would request that the district court's decision be reversed. And, I mean, to be clear, we think you could affirm, but it seemed the appropriate course of action here in light of what happened at the pavey hearing is to reverse and remand the case back to the district court for another pavey hearing to sort out any credibility issues. And just to clarify, you think the question would be open on remand, whether he can exhaust or whether he could have exhausted without pursuing the other track. Yes, absolutely. Yes. Thank you. Thank you. Thank you, Your Honors. I would just like to make a couple of quick points. First of all, the logs came up for the first time at the hearing because the state's witnesses testified about them. They reviewed them and testified about them. The second thing I would like to say is that this court's decision in Roberts v. Neal put the state on clear notice of what it had to introduce to meet its burden in a case like this one. And on remand in Roberts, as we point out in our reply brief, the state discovered, very much like it has now, that at Big Muddy Correctional Center, emergency grievances were logged differently and actually weren't logged at all if they were determined not to be in emergency status. The state then had to successfully fight off a sanctions motion and withdrew its exhaustion defense. I want to point out, and we didn't put this in our letter, but we discovered it in preparation for oral argument, there is overlap between the defense team in Roberts and the defense team that appeared at Mr. Boykin's paybee hearing. We think absolutely the state should have been on notice about what it was required to introduce here. And the last point I would like to mention, Your Honors, is that in the event there is a remand for further proceedings on exhaustion, we think it would be a good idea to instruct the district court, number one, that Mr. Boykin should have access to more discovery and more broader discovery about the emergency grievance long issue and other issues than he got at the first hearing. The second thing that we would urge this court to do is instruct the district court to carefully consider whether Mr. Boykin needs counsel for two reasons. First of all, as the events of the past few days have unveiled, the exhaustion question in this case is going to be more complicated, and, Your Honor, it may actually involve on remand a district court trying to find out what went awry at the first hearing and what consequences, if any, should flow from that for the state's affirmative defense. We think Mr. Boykin will need counsel to help participate in the resolution of that issue. Second of all, this court has repeatedly noted in cases like Santiago and Navajar and DeWitt that one of the things counsel can do for a pro se litigant is assist them in obtaining discovery in difficult circumstances and with potentially non-cooperative opponents. And we think that as a precautionary measure, the district court should seriously consider whether Mr. Boykin similarly needs the assistance of counsel to obtain the information he needs, not only to prevail at a potential second pavy hearing, but also to actually get the evidence he needs to pursue his claims. And with that, Your Honor, we would ask that the court reverse or remand along the lines that I have just communicated. Thank you, counsel. Thank you to both counsel, and the case is taken under advisement.